**Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000015
15-JUN-2017
07:54 AM**

NO. CAAP-15-0000015

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN THE MATTER OF PC

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-M NO. 14-1-6971)

SUMMARY DISPOSITION ORDER
(By: Reifurth, Presiding Judge, Ginoza and Chan, JJ.)

Respondent-Appellant PC appeals from the "Findings and Order of Involuntary Hospitalization" (Findings & Order) filed on December 9, 2014 in the Family Court of the First Circuit (family court)[1] in which the family court ordered that PC be involuntarily committed at the Tripler Army Medical Center (TAMC) for a period not to exceed seven days from the date of the hearing, unless sooner discharged.

On appeal, PC contends that the family court erred in concluding that there was clear and convincing evidence that PC was "imminently dangerous to others" warranting involuntary hospitalization[2].

---

[1] The Honorable Jennifer L. Ching presided.

[2] PC also contends that although the commitment period has expired, this appeal is not moot because it falls within the collateral consequence exception to the mootness doctrine. We find the application of the collateral consequence exception appropriate under the circumstances of this particular case and therefore, the issue on appeal is not moot. See Hamilton ex rel. Lethem v. Lethem, 119 Hawaiʻi 1, 9-10, 193 P.3d 839, 847-848 (2008). (adopting the collateral consequence exception to the mootness doctrine in a case involving domestic violence temporary restraining orders (TRO) where there was a reasonable possibility that prejudicial collateral consequences would occur as a result of the entry of the TRO.)

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve PC's point of error as follows, and affirm the family court's Findings & Order.

On November 24, 2014, PC was admitted to TAMC for emergency hospitalization for having delusional thoughts that led to homicidal ideations towards his father (Father). Prior to PC's admission, PC was visiting his family for the holidays and temporarily living with his mother (Mother) and Father. PC was experiencing delusions of being assaulted earlier in life, which he believes Father was responsible for, causing increased tensions within the family. During this time, PC sent threatening text messages to his parents which included pictures of guns, bullets, and knives. On November 23, 2014, Mother and Father decided to vacate their home and stay at a friend's house out of fear for their safety. That night, PC plunged a large kitchen knife into his parent's mattress on the side where Father usually slept. Mother discovered the knife impaled in the mattress the next day and called the police. The police took PC into custody and transported him to TAMC where he was admitted as a patient.

On November 25, 2014, the Department of Health filed a "Petition for Involuntary Hospitalization" (Petition). At the December 4, 2014 hearing on the Petition, the family court found that pursuant to HRS §§ 334-60.2 and 334-60.5(j), PC was (1) mentally ill, (2) imminently dangerous to others, and (3) in need of care and/or treatment and there was no suitable alternative available through existing facilities and programs, which would be less restrictive than hospitalization. The Petition was granted, and the court issued an order authorizing TAMC to retain PC for treatment for a period not to exceed seven days from the date of the hearing.

The statutory criteria for involuntary civil commitment are set forth in Hawaii Revised Statutes (HRS) § 334-60.2, which provides:

2

> **Involuntary hospitalization criteria.** A person may be committed to a psychiatric facility for involuntary hospitalization, if the court finds:
>
> (1) That the person is mentally ill or suffering from substance abuse;
>
> (2) That the <u>person is imminently dangerous to</u> self or others; and
>
> (3) That the person is in need of care or treatment, or both, and there is no suitable alternative available through existing facilities and programs which would be less restrictive than hospitalization.

HRS § 334-60.2 (2016 Supp.). The first criterion must be established by the "beyond a reasonable doubt" standard, while the second and third criteria must be established by the "clear and convincing evidence" standard. HRS § 334-60.5(j) (2016 Supp.).

HRS § 334-1 defines "Dangerous to others" as "likely to do substantial physical or emotional injury on another, as evidenced by a recent act, attempt or threat." HRS § 334-1 (2010). "'Imminently dangerous to self or others' means that, without intervention, the person will likely become dangerous to self or dangerous to others within the next forty-five days." HRS § 334-1 (2016 Supp.).

The issue presented on appeal is whether there was clear and convincing evidence[3] in the record to support the family court's findings that PC was "imminently dangerous to others." The family court specifically found that PC was:

> imminently dangerous to others, by clear and convincing evidence, in that the Subject is likely to do substantial physical and emotional injury on Mother and Father as evidenced by the recent act of plunging a large kitchen knife in the Father's side of the mattress, by the recent threats to kill Father, and the recent threatening text messages sent by Subject to Mother and Father.

The family court based its determination regarding whether PC was

---

[3]      "Clear and convincing evidence" is defined as:

an intermediate standard of proof greater than a preponderance of the evidence, but less than proof beyond a reasonable doubt required in criminal cases. It is that degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established, and requires the existence of a fact be highly probable.

Masaki v. General Motors Corp., 71 Haw. 1, 15, 780 P.2d 566, 574, *reconsideration denied*, 71 Haw. 664, 833 P2d 899 (1989) (citations omitted).

"imminently dangerous to others" on the testimony of three witnesses, Dr. Helena H. Nakama (Dr. Nakama), PC's treating psychiatrist during his admission to TAMC, Mother and Father.

Dr. Nakama testified that PC would be imminently dangerous to others if he was immediately released from the hospital based on the following factors: (1) the day before the hearing, PC told her that he wanted to leave the hospital and "bear arms"; (2) PC admitted to having homicidal ideations toward Father, and continued to "perseverate and ruminate on his father as well as other unspecified people that he believes were involved" in his delusion of being assaulted; (3) seeing Father at the hearing on the Petition after not seeing him for several days could exacerbate the situation; (4) the incident on November 23, 2014 when PC plunged a large kitchen knife into his parents' mattress; and (5) the threatening text messages PC sent to Mother and Father, which included pictures of guns, bullets, and knives. Dr. Nakama further stated that a period of seven days in which PC would be involuntarily committed is being requested in order to further evaluate PC, attempt to administer medication, keep him in a secure environment, and for discharge planning.

Father testified in regards to his concerns of his own safety in light of the threats made by PC. Specifically, Father discussed how his presence around PC caused PC to become increasingly agitated inducing erratic behavior. Father would leave his home during these behavioral episodes to avoid aggravating the situation further. Father stated that he perceived the various text messages with the accompanying pictures sent by PC as threats to his own safety.

Mother testified that she felt that PC's behavior and the emails and text messages received from PC were of a threatening nature causing concern for the safety of Father and herself. She explained that she had been the one to discover the large kitchen knife plunged into Father's side of the mattress and that she felt that had Father been home, that there would have been serious injury to one or both of them.

PC's contention that the evidence in support of imminent danger to others was not clear and convincing because Dr. Nakama's request that PC be committed for seven days or less

4

suggested that although PC was still delusional, he no longer harbored the homicidal ideations towards his father that he had when he was first admitted to TAMC, are without merit.   The family court's decision to civilly commit PC for a period of seven days does not imply that PC was no longer imminently dangerous to others.   The family court's decision was within the court's discretion to make and was fully supported by evidence in the record and reasonable reliance on the credible expert testimony of Dr. Nakama's assessment of PC's care and treatment.

Testimony from Dr. Nakama, Father and Mother constituted clear and convincing evidence in the record to support the family court in concluding that PC was imminently dangerous to others (i.e. PC was likely to do substantial physical and emotional injury on Mother and Father as evidenced by the recent act of plunging a large kitchen knife in Father's side of the mattress, by the recent threats to kill Father, and the recent threatening text messages sent by PC to Father and Mother).   Accordingly, the underlying Finding of Facts, which support the family court's conclusion that PC was imminently dangerous to others by clear and convincing evidence are not clearly erroneous.

Therefore, the family court's December 9, 2014 "Findings and Order of Involuntary Hospitalization" is affirmed.

DATED:   Honolulu, Hawai'i, June 15, 2017.

On the briefs:

William H. Jameson, Jr.,
Deputy Public Defender
for Respondent-Subject/
Appellant.

Presiding Judge

Associate Judge

Julio C. Herrera,
Mary Anne Magnier, and
Jay K. Goss,
Deputy Attorneys General
for Appellee Department of
Health.

Associate Judge